## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **BALTASAR RUIZ-MAGANA**, on behalf of himself and all other similarly situated employees, known and unknown,<br><br>Plaintiff,<br>v.<br><br>**ABP PUBLIC ADJUSTER CO.** an Illinois corporation,<br>**ABP REMODELING INC.**, an Illinois corporation,<br>**ABILENE BERRELES**, individually,<br>**DAVID BERRELES**, individually, and<br>**JOSE PEREZ**, individually,<br><br>Defendants. | | Civil Action<br><br><br><br>No.<br><br><br><br><br><br>JURY DEMAND |

## COMPLAINT

By and through his attorneys of record and on behalf of himself and all other similarly situated employees, known and unknown, the plaintiff, BALTASAR RUIZ-MAGANA, (the "Plaintiff"), hereby complains of the defendants, ABP PUBLIC ADJUSTER CO. an Illinois corporation, ABP REMODELING INC., an Illinois corporation, ABILENE BERRELES, individually, DAVID BERRELES, individually, and JOSE PEREZ, individually (the "Defendants"). Pleading hypothetically and in the alternative, the Plaintiff alleges as follows:

### I. INTRODUCTION

1. This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as a result of the Defendants' failure to pay overtime compensation to the Plaintiff, and to other similarly situated employees of the Defendants

(the "Collective Class"). The Plaintiff routinely worked in excess of 40 hours per week for the Defendants, but the Defendants failed and refused to pay him time-and-one-half overtime compensation for the hours he worked in excess of 40 as the FLSA requires. Upon information and belief, the Defendants failed and refused to pay the Collective Class members time-and-one-half overtime compensation for the hours they worked in excess of 40 as well; and, upon information and belief, the Defendants continue this improper payroll practice through the present day. In Count I, the Plaintiff bring claims pursuant to Section 216(b) of the FLSA.

2.      In Count II, the Plaintiff brings a supplemental claims pursuant to the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.* The rights and remedies set forth in these statutes are generally similar and analogous to those that Congress set forth in the FLSA.

3.      In Count III, the Plaintiff brings supplemental claims pursuant to the Illinois Employee Classification Act ("IECA"), 820 ILCS 185/1 *et seq.*

**The Defendants' Scheme to Avoid Paying Overtime Compensation and Minimum Wage**

4.      In order to avoid paying the Plaintiff overtime compensation at the rate of one and one-half times the Plaintiff's regular hourly wage rate, the Defendants intentionally misclassified the Plaintiff as an independent contractor.

5.      Upon information and belief, in order to avoid paying the Collective Class members overtime compensation at the rate of one and one-half times their regular hourly wage rates, the Defendants intentionally misclassified, and continue to misclassify, the Collective Class members as independent contractors.

6.     From about June, 2017, to about May 14, 2019 (the "Employment Period"), the Defendants allowed the Plaintiff to perform labor for them in their roofing, construction and remodeling business.

7.     During the Employment Period, the Plaintiff worked an average of 52 hours per week for the Defendants.

8.     During the Employment Period, the number of hours that the Plaintiffs worked each week varied between about 40 and 72 (with an average of about 52, as indicated above).

9.     During the Employment Period, the Defendants paid the Plaintiff at the rate of $180.00 per day, no matter how many hours the Plaintiff worked in that day; as an be extrapolated from the allegations above, the Plaintiff worked anywhere between 8 and 12 hours per day for the Defendants.

10.     During the Employment Period, with rare exception, the Plaintiff worked at least 5 days per week for the Defendants, but often worked 6 days per week for the Defendants.

11.     Because the Defendants paid the Plaintiff a fixed, per diem rate, among other reasons, the Defendants did not accurately record the number of hours that the Plaintiff worked for them each week.

12.     Where an employer fails to keep accurate payroll records, "Reasonable approximations . . . are appropriate." *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 669 n.2 (7th Cir. Ill. 2010) (citations omitted).

13.     Although the Defendants did not pay the Plaintiff a "salary" per se, their practice of paying him a per diem rate resulted in the payment of a de facto weekly "salary" of about $990.00 per week for an average of about 52 hours of labor.

14.     Because "the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week." 29 CFR § 778.114(a).

15.     It follows that the Plaintiff's de facto hourly wage rate fluctuated; it was, however, on average $19.04 per hour; the Defendants therefore shorted the Plaintiff an average of about $114.24 in overtime compensation each week during the Employment Period [$19.04 / 2 = $9.52 (hourly overtime premium); $9.52 x 12 hours = $114.24].

16.     Upon information and belief, the Defendants utilized the same scheme as described above with regard to the Plaintiff to avoid paying overtime compensation to the members of the Collective Class during the Employment Period and continue to do so through the present day.

17.     During the Employment Period, the Plaintiff came into contact with about 10 other individuals who were allowed to perform labor for the Defendants on a daily basis; upon information and belief, the Defendants allowed additional individuals to perform labor for them, whom the Plaintiff never had occasion to encounter.

## II.   THE PARTIES

18.     The Plaintiff is an individual domiciled within Illinois who resides within the Northern District of Illinois.

4

19.     The following defendants are individuals who are domiciled in Illinois and who reside within the Northern District of Illinois: a) ABILENE BERRELES; b) DAVID BERRELES; and c) JOSE PEREZ.

20.     The defendant, ABP PUBLIC ADJUSTER CO ("APAC"), is an Illinois corporation whose: a) registered office is located at or near 825 Village Quarter Road, Suite A4, West Dundee, IL 60118; and b) principal place of business is located at or near the same address.

21.     The defendant, ABP REMODELING INC. ("ARI"), is an Illinois corporation whose: a) registered office is located at or near 825 Village Quarter Road, Suite A4, West Dundee, IL 60118; and b) principal place of business is located at or near the same address.

22.     At all times relevant to this action, the following defendants were/are corporate officers of APAC: a) ABILENE BERRELES; b) DAVID BERRELES; and c) JOSE PEREZ.

23.     At all times relevant to this action, the following defendants were/are corporate officers of ARI: a) ABILENE BERRELES; b) DAVID BERRELES; and c) JOSE PEREZ.

24.     At all times relevant to this action, the following defendants held/hold and ownership interest in APAC: a) ABILENE BERRELES; b) DAVID BERRELES; and c) JOSE PEREZ.

25.     At all times relevant to this action, the following defendants held/hold and ownership interest in ARI: a) ABILENE BERRELES; b) DAVID BERRELES; and c) JOSE PEREZ.

26.     At all times relevant to this action, the following defendants exercises/exercise significant control over APAC's day-to-day operations: a) ABILENE BERRELES; b) DAVID BERRELES; and c) JOSE PEREZ.

27.     At all times relevant to this action, the following defendants exercises/exercise significant control over ARI's day-to-day operations: a) ABILENE BERRELES; b) DAVID BERRELES; and c) JOSE PEREZ.

28.     At all times relevant to this action, the following defendants exercised/exercise significant control over APAC's payroll policies and practices: a) ABILENE BERRELES; b) DAVID BERRELES; and c) JOSE PEREZ.

29.     At all times relevant to this action, the following defendants exercised/exercise significant control over ARI's payroll policies and practices: a) ABILENE BERRELES; b) DAVID BERRELES; and c) JOSE PEREZ.

30.     At all times relevant to this action, ABILENE BERRELES had/has the power to: a) hire and fire APAC's employees, including the Plaintiff and the Collective Class members; b) set the work schedules of APAC's employees, including the Plaintiff and the Collective Class members; c) direct the work of APAC's employees, including the Plaintiff and the Collective Class members; and d) set the pay rates of APAC's employees, including the Plaintiff and the Collective Class members.

31.     At all times relevant to this action, ABILENE BERRELES had/has the power to: a) hire and fire ARI's employees, including the Plaintiff and the Collective Class members; b) set the work schedules of ARI's employees, including the Plaintiff and the Collective Class members; c) direct the work of ARI's employees, including the Plaintiff and

6

the Collective Class members; and d) set the pay rates of ARI's employees, including the Plaintiff and the Collective Class members.

32.     At all times relevant to this action, DAVID BERRELES had/has the power to: a) hire and fire APAC's employees, including the Plaintiff and the Collective Class members; b) set the work schedules of APAC's employees, including the Plaintiff and the Collective Class members; c) direct the work of APAC's employees, including the Plaintiff and the Collective Class members; and d) set the pay rates of APAC's employees, including the Plaintiff and the Collective Class members.

33.     At all times relevant to this action, DAVID BERRELES had/has the power to: a) hire and fire ARI's employees, including the Plaintiff and the Collective Class members; b) set the work schedules of ARI's employees, including the Plaintiff and the Collective Class members; c) direct the work of ARI's employees, including the Plaintiff and the Collective Class members; and d) set the pay rates of ARI's employees, including the Plaintiff and the Collective Class members.

34.     At all times relevant to this action, JOSE PEREZ had/has the power to: a) hire and fire APAC's employees, including the Plaintiff and the Collective Class members; b) set the work schedules of APAC's employees, including the Plaintiff and the Collective Class members; c) direct the work of APAC's employees, including the Plaintiff and the Collective Class members; and d) set the pay rates of APAC's employees, including the Plaintiff and the Collective Class members.

35.     At all times relevant to this action, JOSE PEREZ had/has the power to: a) hire and fire ARI's employees, including the Plaintiff and the Collective Class members; b) set the work schedules of ARI's employees, including the Plaintiff and the Collective Class

members; c) direct the work of ARI's employees, including the Plaintiff and the Collective Class members; and d) set the pay rates of ARI's employees, including the Plaintiff and the Collective Class members.

### III.   JURISDICTION AND VENUE

36.     Federal question jurisdiction is conferred on this Court by Section 16(b) of the FLSA and 28 U.S.C. §1331.

37.     Supplemental jurisdiction over the Illinois statutory claims alleged herein is conferred on this Court by 28 U.S.C. § 1367(a).

38.     Venue is proper as the acts or omissions that gave rise to the claims alleged herein occurred within the Northern District of Illinois.

### IV.   STATUTORY CONSENT

39.     The Plaintiff bring this case as a collective action under the FLSA on behalf of himself and the Collective Class, and in accord with Section 16(b) of the FLSA, the Plaintiff has given written consent to bring such an action (attached as **Exhibit A** and incorporated by reference).

### V.   GENERAL ALLEGATIONS

40.     At all times relevant to this action, the Defendants, and each of them, were the Plaintiff's "employer", within the meaning of Section 3(a) and (d) of the FLSA in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

41.     At all times relevant to this action, the Defendants are/were the Collective Class members' "employer", within the meaning of Section 3(a) and (d) of the FLSA in that

8

the Defendants act/acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

42. At all times relevant to this action, the Defendants were the Plaintiff's "employer" within the meaning of Section 3(c) of the IMWL in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the Plaintiff, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

43. APAC had gross receipts in excess of $500,000.00 in: a) 2016; b) 2017; c) 2018; d) 2019; e) the twelve-month period beginning April 1, 2019, and ending March 31, 2020; f) the twelve-month period beginning July 1, 2019, and ending June 30, 2020; and g) the twelve-month period beginning October 1, 2019, and ending September 30, 2020.

44. ARI had gross receipts in excess of $500,000.00 in: a) 2016; b) 2017; c) 2018; d) 2019; e) the twelve-month period beginning April 1, 2019, and ending March 31, 2020; f) the twelve-month period beginning July 1, 2019, and ending June 30, 2020; and g) the twelve-month period beginning October 1, 2019, and ending September 30, 2020.

45. The Defendants, and their affiliated business entities, which entities operated construction businesses within the Northern District of Illinois, had gross receipts in excess of $500,000.00 in: a) 2016; b) 2017; c) 2018; d) 2019; e) the twelve-month period beginning April 1, 2019, and ending March 31, 2020; f) the twelve-month period beginning July 1, 2019, and ending June 30, 2020; and g) the twelve-month period beginning October 1, 2019, and ending September 30, 2020.

46.     At all times relevant to this action, the Defendants operated, controlled and/or constituted an "enterprise" within the meaning of Section 3(r) of the FLSA (the "Enterprise").

47.     At all times relevant to this action, the Enterprise operated a construction business within the Northern District of Illinois.

48.     At all times relevant to this action, the Plaintiff was an "employee" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

49.     At all times relevant to this action, the Collective Class members are/were "employees" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

50.     At all times relevant to this action, the Plaintiff was an "employees" of the Defendants within the meaning of Section 3(d) of the IMWL.

51.     During the course of his employment by the Defendants, the Plaintiff handled goods that moved in interstate commerce including but not limited to nails, screws, aluminum siding, tar paper, lumber and paint.

52.     During the course of their employment by the Defendants, the Collective Class members handled/handle goods that moved in interstate commerce including but not limited to nails, screws, aluminum siding, tar paper, lumber and paint.

53.     During the course of their employment by the Defendants, the Plaintiff and the Collective Class members were/are not exempt from the minimum wage and maximum hour provisions of the FLSA.

54.     During the course of their employment by the Defendants, the Plaintiff was not exempt from the minimum wage and maximum hour provisions of the IMWL.

55. The Defendants routinely and as a matter of practice and policy required the Plaintiff to work more than 40 hours per week, but then failed and refused to pay the Plaintiff overtime compensation at a rate not less than one and one-half times his regular hourly rate for the hours he worked in excess of 40 in given weeks.

56. Upon information and belief, the Defendants routinely and as a matter of practice and policy required/require the Collective Class members to work more than 40 hours per week, but then failed/fail and refused/refuse to pay them overtime compensation at rates not less than one and one-half times their regular hourly rates for the hours they worked in excess of 40 in given weeks.

### COUNT I
### (Violation of the FLSA)

57. The Plaintiff re-alleges the foregoing allegations.

58. Among other ways, the Defendants violated the FLSA by:

    a. failing to pay the Plaintiff for certain overtime (in excess of 40 in a given workweek) hours at a rate equal to or greater than one and one-half times the regular rate at which he was employed;

    b. failing to accurately record the number of hours the Plaintiff worked each week;

    c. failing to provide the Plaintiff with pay stubs that accurately listed the number of hours he worked each week; and

    d. intentionally misclassifying the Plaintiff as an independent contactor, as part of a scheme to avoid paying him proper overtime compensation.

59. Upon information and belief, the Defendants also violated the FLSA by:

    a. failing to pay the Collective Class members for certain overtime (in excess of 40 in a given workweek) hours at a rate equal to or greater than one and one-half times the regular rate at which they were/are employed;

b. failing to accurately record the number of hours the Collective Class members worked/works each week;

c. failing to provide the Collective Class members with pay stubs that accurately listed/list the number of hours they worked/work each week; and

d. intentionally misclassifying the Collective Class members as independent contractors, as part of a scheme to avoid paying them proper overtime compensation and minimum wage.

60. The Defendants' violation of the FLSA was willful in that the Defendants were aware or should have been aware of their obligations under the FLSA, but nevertheless attempted to circumvent its provisions.

61. The Defendants failed to take affirmative steps to ascertain their obligations under the FLSA.

WHEREFORE the Plaintiff, on behalf of himself and the Collective Class, prays for judgment in his favor and against the Defendants, and for the following relief:

A. damages in an amount equal to the unpaid overtime compensation due and owing to the plaintiffs for each hour the plaintiffs worked in excess of 40 in any given week, but for which the Defendants failed to pay the plaintiffs at a rate equal to or greater than one and one-half times the regular rate at which the plaintiffs were employed (in no case less than one and one-half times the IMWL's mandatory minimum rate);

B. statutory liquidated damages as allowed by the FLSA;

C. interest on all amounts awarded;

D. attorneys' fees, together with costs of suit and collection; and

E. such further relief as may be fair and just in the premises.

## COUNT II
### (Violation of the IMWL)

62. The Plaintiff re-alleges the foregoing allegations.

12

63.    Among other ways, the Defendants violated the IMWL by:

    a.    failing to pay the Plaintiff for certain overtime (in excess of 40 in a given workweek) hours at a rate equal to or greater than one and one-half times the regular rate at which the Plaintiff was employed;

    b.    failing to accurately record the number of hours the Plaintiff worked each week;

    c.    failing to provide the Plaintiff with pay stubs that accurately listed the number of hours he worked each week; and

    d.    intentionally misclassifying the Plaintiff as an independent contractor, as part of a scheme to avoid paying him proper overtime compensation.

64.    The Defendants were aware or should have been aware of its obligations under the IMWL, but nevertheless attempted to circumvent its provisions.

65.    The Defendants failed to take affirmative steps to ascertain their obligations under the IMWL.

WHEREFORE the Plaintiff prays for judgment in his favor and against the Defendants, and for the following relief:

    A.    damages in an amount equal to the unpaid overtime compensation due and owing to the Plaintiff for each hour the Plaintiff worked in excess of 40 in any given week, but for which the Defendants failed to pay the Plaintiff at a rate equal to or greater than one and one-half times the regular rate at which the Plaintiff was employed (in no case less than one and one-half times the IMWL's mandatory minimum rate);

    B.    statutory penalties as allowed by the IMWL;

    C.    interest on all amounts awarded;

    D.    attorneys' fees, together with costs of suit and collection; and

    E.    such further relief as may be fair and just in the premises.

## COUNT III
### (Violation of the IECA)

66.     The Plaintiff re-alleges the foregoing allegations.

67.     During the Employment Period, the Defendants were engaged in "construction" as defined by 820 ILCS 185/5 in that, among other things, they routinely performed construction, remodeling and roofing services for customers withing the State of Illinois.

68.     During the Employment Period, the Plaintiff was an "employee" of the Defendants as defined by 820 ILCS 185/10 in that, among other things:

    a.  The Plaintiff is an individual;

    b.  The Plaintiff was not in fact free from control over the construction, remodeling and roofing services, which he performed for the Defendants;

    c.  The construction, remodeling and roofing services performed by the Plaintiff were not outside the usual course of services, which the Defendants provided to their customers and clients;

    d.  The Plaintiff was not engaged in an independently established trade;

    e.  The Plaintiff did not have a substantial investment of capital in any business, beyond ordinary tools, equipment and personal vehicles;

    f.  During the Employment Period, the Plaintiff did not make the services he performed for the Defendants available to the general public or the business community on a continuing basis – during the Employment Period the Plaintiffs performed services for no persons other than the Defendants, as alleged above; and

    g.  The construction, remodeling and roofing services provided by the Plaintiff was performed under the Defendants' name, or name/s.

69.     During the Employment Period, the Defendants were the Plaintiff's "employers" as defined by 820 ILCS 185/5 in that, among other things, the Defendants

controlled, scheduled, supervised and directed the services performed by the Plaintiff, as alleged above.

70.     The Defendants violated the IECA by intentionally misclassifying the Plaintiff as an independent contractor, in order to deprive the Plaintiff of the overtime wages to which the Plaintiff was entitled under the FLSA and the IMWL.

71.     The Defendants did in fact fail to pay the Plaintiff the overtime wages to which the Plaintiff was entitled under the FLSA and the IMWL.

72.     The Plaintiffs was an "interested party" and/or an "aggrieved person" as defined by 820 ILCS 185/5 in that the Plaintiff was deprived of certain wages that are due and owing to him as the result of the Defendants' violation of the IECA.

WHEREFORE the Plaintiff prays for judgment in his favor and against the Defendants, and for the following relief:

A.  damages in an amount equal to the unpaid wages (including but not limited to overtime compensation) due and owing to the Plaintiff for each hour the Plaintiff worked but for which the Defendants failed to pay the Plaintiff at a rate equal to the one-and-one-half times his regular rate of pay – for those hours over 40 in any given workweek);

B.  compensatory damages in an amount equal to $500.00 per pay period, during the Employment Period;

C.  interest on all amounts awarded;

D.  attorneys' fees, together with costs of suit and collection; and

E.  such further relief as may be fair and just in the premises.

## <u>JURY DEMAND</u>

The Plaintiff demands a trial by jury of all issues set forth herein that are capable of being tried by a jury.

Respectfully submitted,

/s/Paul Luka
Attorney for Plaintiff

Paul Luka
paul@mendozalaw.net
Mendoza Law, P.C.
120 S. State Street, Suite 400
Chicago, IL 60603
(312) 508-6010 (voice and fax)

# EXHIBIT A

## CONSENT TO BE A PARTY PLAINTIFF

The undersigned hereby authorizes and engages Alex Mendoza Law, P.C. to pursue his/her claims for unpaid wages, and other relief, against ABP Remodeling, Inc, APB Public Adjuster Co., Jose Perez, Abiline Berreles, David Berreles, and any other person/s who may have employed him/her in conjunction with said person/s (collectively the "Employers"), and by the signature below the undersigned hereby consents to be a party plaintiff in a lawsuit brought against the Employers on behalf of him/herself and all other similarly situated employees, known and unknown, pursuant to 29 U.S.C. 216(b).

_____
Signature

_____
Print Name